IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RACHEL LOCKHART,<br><br>    Plaintiff,<br><br> vs.<br><br>FCA US, LLC, a Delaware limited liability company,<br><br>    Defendant. | **8:24CV199**<br><br>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

   This case arises from plaintiff Rachel Lockhart's contention that the headrest behind the driver's head on her 2014 Jeep Patriot spontaneously and abruptly opened while she was driving, striking her in the head, and causing serious personal injuries, including traumatic brain injury. Filing 1-1 at 1 (¶ 1). It is now before the Court on three motions by defendant FCA US, LLC, which according to the Complaint is the owner of the brand name and model of vehicles known in the United States as "Jeep Patriot" automobiles. Filing 1-1 at 1 (¶ 3). FCA's first motion is a Motion for Summary Judgment, Filing 66, based on FCA's assertions that Lockhart has no evidence that the headrest deployment caused her injuries and, in the alternative, that Lockhart has failed to adduce any reliable expert testimony of the alleged defect in the headrest. Filing 67 at 1. FCA's second and third motions are Motions to Exclude the Opinions and Testimony of two of Lockhart's experts. Filing 69; Filing 72. Because the Court agrees with FCA's contention that Lockhart's causation argument "is simply *post hoc ergo prop[t]er hoc*,"[1] Filing 86 at 6, FCA's Motion for Summary Judgment is granted, and FCA's Motions to Exclude Opinions and Testimony [of Experts] are denied as moot, Filing 69; Filing 72. Judgment shall enter accordingly.

---

[1] *Post hoc ergo propter hoc* is Latin for "after this, therefore resulting from it," and is a "logical fallacy of assuming that a causal relationship exits when acts or events are merely sequential." BLACK'S LAW DICTIONARY (11th ed. 2019), 1412.

1

# I.  INTRODUCTION

## A.  Factual Background

The factual background stated here is drawn from the parties' statements of facts in support of and resistance to summary judgment.[2] The Court finds fewer facts dispositive of the Motion for Summary Judgment than the parties' statements suggest. Also, the Court finds that numerous purported factual disputes between the parties are about unnecessary characterizations of the facts, rather that disputes about the facts themselves. Thus, in addition to making some other non-substantive changes, the Court has stated some of the factual allegations below to set out apparently undisputed parts while eliminating challenged characterizations.[3] On the other hand, the Court has not combed the record in search of evidence to support statements of facts for which the Court finds that cited evidence does not provide the necessary support. *See Webb v. Lakey*, 111 F.4th 939, 942 (8th Cir. 2024) ("[T]he district court was not obliged to pore through the records in search of a factual dispute." (citing *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758–59 (8th Cir. 2015))); *Jain*, 779 F.3d at 758–59 ("A district court is not required to mine the 'summary judgment record searching for nuggets of factual disputes to gild a party's arguments.'" (quoting *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006))). Unless otherwise indicated, the facts stated here are undisputed.

Plaintiff Rachel Lockhart is a resident of Douglas County, Nebraska. Filing 81 at 1 (¶ 1). Defendant FCA US, LLC, f/k/a Chrysler Group, LLC, is a Delaware limited liability company

---

[2] The Court has relied on Filing 81, Plaintiff's Response to Defendant's Statement of Facts, because it includes both Defendant's allegations set out in Filing 67-2 and Plaintiff's responses. The Court has also relied on Filing 86-1, Defendant's Response to Plaintiff's Additional Material Facts because it also includes both Plaintiff's additional allegations set out in Filing 81 and Defendant's responses.

[3] For example, FCA purports to quote an exhibit stating that "inadvertent deployments simply [sic] 'simply put the AHR into the deployed "safe" position.'" Filing 81 at 5 (¶ 17). Lockhart objects to this statement on the ground that "the . . . quote is just 'put the AHR into the deployed "safe" position." Filing 81 at 5 (¶ 17(a)). If the Court considered this statement material, it would set it out as follows to eliminate the disputed characterization: "[I]nadvertent deployments put the AHR into the deployed 'safe' position."

with its principal place of business in Michigan. Filing 81 at 2 (¶ 4). FCA's role in the production of the "active head restraint (AHR)" at issue in this lawsuit was to set functional and performance requirements for the manufacturer, Grammer Industries (Grammer), and to require Grammer's compliance with those requirements. Filing 81 at 3 (¶ 9) (undisputed allegation that Grammer manufactured the AHR); Filing 81 at 4 (¶ 12) (undisputed allegation of FCA's "role in the production of the AHR"); *see also* Filing 82 at 2 (¶ 8) (citing 72 Fed. Reg. 25484, at 25484–85, for the types of head restraints vehicle manufacturers could use to comply with the applicable federal standard). An AHR is a headrest that is positioned further away from the occupant's head for increased comfort during normal driving, but it moves closer to the occupant when needed in a rear collision. Filing 81 at 2–3 (¶ 8)

Because the Court concludes that the dispositive issue in this case is whether there are genuine issues of material fact on causation of Lockhart's injuries by the deployment of the AHR, the Court finds it unnecessary to discuss various other issues that are set out in the parties' statements of fact. Thus, the remaining factual allegations of significance to this decision concern the incident in which Lockhart was allegedly injured by deployment of the AHR, and allegations purportedly demonstrating or failing to demonstrate the causation of her injuries by the deployment of the AHR.

Lockhart alleges that at some time in the spring or summer of 2023, she was driving her the 2014 Jeep Patriot to take her son to an activity in the City of Omaha. Filing 81 at 6 (¶ 20). FCA alleges that this incident occurred on July 24, 2023, citing Lockhart's deposition. Filing 81 at 6 (¶ 20) (citing Filing 68-10 at 29 (Lockhart Depo. at 28:2–6; 64:16–19)). Reading further, Lockhart's deposition indicates confusion about whether the incident occurred in July or April 2023. Filing 68-10 at 29 (Lockhart Depo. at 28:11–25). Lockhart allegedly heard a "giant explosion" and felt pain so severe in her midback that she thought "Mike Tyson or a really huge

3

boxer" punched her in the back. Filing 81 at 6 (¶¶ 20–21). Lockhart was not thrown into the steering wheel, did not lose consciousness, and stayed in her lane of travel while keeping her vehicle under control. Filing 81 at 6 (¶ 22). She continued driving her son to her ex-husband's house, where she looked at the headrest and found it to be "wide open." Filing 81 at 6 (¶¶ 23–24). Lockhart then dropped her son off at an event before driving to urgent care. Filing 81 at 6 (¶ 25).

A medical record shows that Lockhart visited urgent care on July 24, 2023, apparently immediately after dropping her son at the event. Filing 68-11 at 13. At urgent care, Lockhart complained only of back pain, which she rated at "3/10." Filing 68-11 at 13. The medical provider stated in her notes, "The strange thing is, patient states the impact was felt mid-back, no impact to neck or back of head. She states it was a sensation of being kicked in the mid-back." Filing 68-11 at 13; *see also* Filing 81 at 7 (¶¶ 27–28). Although Lockhart does not dispute this statement, she does contend that notes indicate "Yes" next to "Pain-Spine.Head." Filing 81 at 7 (¶ 28(a)); Filing 68-11 at 13. The parties agree Lockhart denied memory loss, headaches, dizziness, impaired balance, vision change, nausea, or any weakness, and that the medical provider did not note any bruising or swelling anywhere on Lockhart's body and observed that Lockhart had no difficulty speaking. Filing 81 at 7 (¶¶ 29–30). An x-ray of Lockhart's midback came back "normal" and "unremarkable." Filing 91 at 7 (¶ 31). A few days later, Lockhart called the medical provider requesting a referral for a concussion diagnosis, but the medical provider stated in her notes about the call that Lockhart "was not complaining of any concussion symptoms at the time of my exam." Filing 81 at 7 (¶ 32).

FCA alleges that Lockhart has an extensive history of anxiety and psychological conditions that pre-date the incident. Filing 81 at 7–8 (¶ 33); *see also* Filing 81 at 8–9 (¶¶ 34–40) (detailing these conditions). Lockhart disputes some of these allegations on the ground that she stated in deposition that since the incident she has increased sensitivity to light and sound, which causes a

4

"vibrating panic" in her stomach, and that she has additional symptoms including breathing issues and palpitations, which she controls with medication. Filing 81 at 8 (¶¶ 33–35). She does not dispute other allegations about her condition before the incident, except to assert that she had "similar" but not the "same" diagnoses. Filing 81 at 9 (¶¶ 36–40).

Douglas McIlwraith, whom Lockhart describes as her "expert on issues of engineering forensics and automotive mechanical engineering," Filing 81 at 10 (¶ 41(a)), stated that he is "not providing any opinion on whether the headrest caused an injury." Filing 81 at 11 (¶ 47). Lockhart's "impairment expert," Dr. Jiaxin Tran, Filing 81 at 11 (¶ 48), testified in deposition that she is not offering any opinion as to whether the headrest caused Lockhart's alleged injuries. Filing 81 at 12 (¶ 52). However, in disputing various factual allegations by FCA, Lockhart asserts, "Medical records indicate that Plaintiff was diagnosed with post-concussive syndrome which came from consultations discussing the active headrest deployment." *See, e.g.,* Filing 86-1 at 6 (¶ 57(a)). FCA does not dispute that some medical records indicate a diagnosis of post-concussive syndrome, but FCA does dispute that the phrase "which came from consultations discussing the active headrest deployment" means any medical record states, concludes, or otherwise indicates that the post-concussive syndrome diagnosis was caused by the headrest deployment. *See, e.g.*, Filing 86-1 at 6 (¶ 57(b)).

### B.  Procedural Background

Lockhart filed this action in the District Court for Douglas County, Nebraska, on April 29, 2024. Filing 1-1 at 1. She asserted claims for strict liability in tort, negligence, breach of express warranty, and breach of implied warranty of merchantability. Filing 1-1 at 11–13. On May 30, 2024, FCA removed this action to this federal court based on diversity of citizenship. Filing 1 at 1. FCA filed its Answer in this Court on June 5, 2024, denying Lockhart's claims and asserting

5

various defenses. Filing 8. Eventually, on August 29, 2025, FCA filed the Motions now before the Court.

## II. LEGAL ANALYSIS

As the Court explained above, the disposition of FCA's Motion for Summary Judgment makes it unnecessary for the Court to reach FCA's Motions to Exclude Experts. Thus, the Court begins its legal analysis with FCA's Motion for Summary Judgment.

### A. The Motion for Summary Judgment

#### 1. The Standards for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, whether or not a court should grant summary judgment often turns on whether or not genuine issues of material fact are apparent on the record. "A factual dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In that context, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the . . . absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Torgerson v. City of Rochester*, 643 F.3d

6

1031, 1042 (8th Cir. 2011) (en banc) (setting out the parties' burdens at summary judgment). On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019). "The Supreme Court's 'repeated' admonition is that 'the [claimant], to survive the [opposing party's] [summary judgment] motion, need only present evidence from which a jury might return a verdict in his favor.'" *Doe by next friend Rothert v. Chapman*, 30 F.4th 766, 772 (8th Cir. 2022) (quoting *Anderson*, 477 U.S. at 257).

    2. *The Parties' Arguments*

    Not only does the Court find that the Motion for Summary Judgment is the only Motion that the Court must decide but that the dispositive issue on the Motion for Summary Judgment— and indeed in the case—is whether there are genuine issues of material fact on causation of Lockhart's injuries by the deployment of the AHR.[4] *See Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 794 (Neb. 2015) ("Whether a plaintiff is proceeding under negligence, defect theories, or breach of express warranty, proximate cause is a necessary element of the plaintiff's case."), *disapproved of on other grounds by Weyh v. Gottsch*, 929 N.W.2d 40 (Neb. 2019); *see also Rusness*, 31 F.4th at 614 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

---

[4] Thus, the Court finds it unnecessary to address the parties' arguments concerning whether there are genuine issues of material fact on a defect in the AHR.

(citation omitted)). The parties vigorously dispute the sufficiency of Lockhart's causation evidence to generate the required genuine issues of material fact.

FCA argues that Lockhart must prove causation for each claim that she asserts. Filing 67 at 13. However, FCA argues that Lockhart lacks evidence that creates a genuine issue of material fact as to causation. Filing 67 at 13. More specifically, FCA argues that Nebraska courts distinguish between "subjective" and "objective" injuries by requiring expert medical testimony to establish causation of a "subjective" injury. Filing 67 at 13. FCA argues that Lockhart's alleged injuries are all "subjective" because they are of such a character that a skilled professional is required to determine the cause and extent of the injuries. Filing 67 at 14–18. Thus, FCA argues that Lockhart must adduce expert testimony that the headrest deployment is capable of causing physical injury and expert testimony that the headrest deployment caused her injuries. Filing 67 at 18–19. FCA argues that Lockhart has neither kind of expert testimony where both of her experts disclaimed giving the opinions required to establish causation. Filing 67 at 18–19. FCA argues that none of the medical records contain any medical opinion on causation even if they discuss Lockhart's condition after the incident in question. Filing 67 at 20.

In contrast, Lockhart argues that adequate medical records exist to establish Lockhart's injuries based on observations from the physicians that linked the alleged injury to the headrest deployment, so that no separate retained expert is required here. Filing 82 at 1. Lockhart points to a clinical note from Madonna Hospital records from August 16, 2023,[5] stating that Lockhart presented for cognitive impairment and blurry vision from a traumatic brain injury and listing reported symptoms, resulting in a diagnosis of post-concussive syndrome, including cognitive impairment, and a recommendation for treatment. Filing 82 at 2. Similarly, Lockhart points to

---

[5] Lockhart identifies this record as dated August 15, 2023, but the record itself identifies the date as August 16, 2025. Filing 80-2 at 5.

medical records from Madonna Hospital from September 6, 2023, describing the incident on July 24, 2023, and the conditions that were then apparent. Filing 82 at 2. She points to other records from Madonna from November 7, 2023, December 6, 2023, and January 8, 2025, discussing her conditions. Filing 82 at 3. She then points to records from Nebraska Spine from August 2, 2023, stating that she was seen for a complaint of a head injury from the headrest incident and assessments of conditions and treatment recommendations. Filing 82 at 3. Thus, Lockhart argues that the records are clear that treating physicians at two facilities linked the incident to symptoms that were identified as having been caused by the headrest. Filing 82 at 3.

In reply, FCA asserts that Lockhart conflates records showing the existence of an injury with records showing causation of that injury. Filing 86 at 1. FCA disputes Lockhart's assertion that expert opinions on causation are unnecessary because medical records are sufficient. Filing 86 at 1. Rather, FCA reiterates that Lockhart's injuries are "subjective," so that expert opinions are required, but Lockhart offers none. Filing 86 at 1. FCA also argues that any "link" between the headrest deployment and Lockhart's symptoms to be found in the medical records are the result of Lockhart's own subjective report of her history, not a causation determination by a medical professional. Filing 86 at 2–4. Next, FCA argues that Lockhart's argument that diagnosis of certain conditions somehow satisfies the causation requirement is wrong because the diagnosis might show that a concussion caused Lockhart's symptoms, but that diagnosis does not show that headrest deployment caused the concussion. Filing 86 at 5. FCA also argues that continuing or recurring symptoms of prior injuries or conditions require rather than eliminate the need for expert opinions on causation. Filing 86 at 5. Indeed, FCA asserts, "The mere fact that Plaintiff's cognitive and psychological conditions may have worsened post-incident does not prove the headrest deployment caused those symptoms. Indeed, Plaintiff's entire argument is simply *post hoc ergo prop[t]er hoc*." Filing 86 at 6.

9

### 3. *Lockhart Has Failed to Generate a Fact Question on Causation*

Lockhart's argument that her medical records alone—without expert testimony—are sufficient to establish causation is wrong for two separate reasons, one legal and one factual.

### a. Lockhart's Injuries Require Expert Testimony on Causation

First, as to Lockhart's legal error, the Nebraska Supreme Court has explained, "Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the [incident] and the injury or disability." *Potter v. McCulla*, 851 N.W.2d 94, 99 (Neb. 2014) (worker's compensation case); *see also Doe v. Zedek*, 587 N.W.2d 885, 891–92 (Neb. 1999) ("Whether Doe's subjective injuries stemmed from Zedek's claimed malpractice presented medically complicated questions requiring expert testimony."); *Eno v. Watkins*, 429 N.W.2d 371, 373 (Neb. 1988) ("The plaintiff's alleged injuries [from an accident] were subjective in nature. Before a plaintiff can recover damages for such injuries, there must be expert medical testimony to establish causation and the extent and nature of the injuries.").

More specifically,

Mental suffering and a sense of helplessness are injuries which are not plainly apparent and are demonstrated primarily by complaints of the victim. Such injuries are, therefore, subjective in nature and effect. *See Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991). We have stated that where the character of an alleged injury is not objective but, rather, subjective, the cause and extent of the injury must be established by expert medical testimony. *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994); *Turek [v. St. Elizabeth Comm. Health Ctr*., 241 Neb. 467, 488 N.W.2d 567 (1992)]; *Tarvin [v. Mutual of Omaha Ins. Co*., 238 Neb. 851, 472 N.W.2d 727 (1991)]; *Eno v. Watkins*, 229 Neb. 855, 429 N.W.2d 371 (1988). *See Binkerd v. Central Transportation Co*., 236 Neb. 350, 461 N.W.2d 87 (1990). Expert testimony is necessary because subjective injuries may be inferred only from their symptoms. *Eiting [v. Godding, 191 Neb. 88, 214 N.W.2d 241 (1974)], supra*. Consequently, medical expert testimony is required to determine the cause and extent thereof. *Id.*

10

*Zedek*, 587 N.W.2d at 891. Expert testimony is also required when a claimant has a prior psychiatric history or prior subjective injuries—such as injuries from a sexual assault—that "further complicate[ ] the issue of causation." *Id.*

Here, Lockhart alleges "traumatic brain jury," "injury, bruise and insult to the skull," "impaired cognition," and pain and suffering. Filing 81 at 1 (¶ 3); *see also* Filing 81 at 7 (¶ 26) (back pain), 7 (¶ 30) (provider found no bruising or swelling anywhere on Lockhart's body and had no difficulty speaking). She alleges "increased sensitivity to light and sound," "vibrating panic" in her stomach, "breathing issues," and "palpitations." Filing 81 at 8 (¶ 33(a)). She also alleges concussion symptoms. *See, e.g.,* Filing 81 at 7 (¶ 32). None of these alleged injuries is plainly apparent and all are demonstrated primarily by complaints of the victim. *See Zedek*, 587 N.W.2d at 891 (distinguishing objective from subjective injuries on this basis). Furthermore, Lockhart does not dispute that she "has an extensive history of anxiety and psychological conditions that predate the incident," Filing 81 at 7–8 (¶ 33), which also require expert testimony on whether an alleged incident caused injuries. *Zedek*, 587 N.W.2d at 891.

b.   Lockhart Offers No Expert Testimony on Causation

As to Lockhart's factual error, although expert testimony is required in this case to establish—or to generate a genuine issue of material fact on—causation of the subjective injuries alleged, Lockhart has pointed to no such testimony. As FCA points out, Douglas McIlwraith, whom Lockhart describes as her "expert on issues of engineering forensics and automotive mechanical engineering," Filing 81 at 10 (¶ 41(a)), stated that he is "not providing any opinion on whether the headrest caused an injury." Filing 81 at 11 (¶ 47). Lockhart's "impairment expert," Dr. Jiaxin Tran, Filing 81 at 11 (¶ 48), testified in deposition that she is not offering any opinion as to whether the headrest caused Lockhart's alleged injuries. Filing 81 at 12 (¶ 52). Indeed, in resisting summary judgment, Lockhart does not even attempt to rely on her experts but instead

11

points to medical records that she argues contain the required expert causation determination by treating medical providers. Lockhart's contention that the medical records contain the required expert causation determination is unavailing.

Lockhart is correct that records from Madonna Hospitals dated August 16, 2023, include an assessment diagnosing post-concussive syndrome; however, totally absent from that assessment is anything resembling the provider's determination of the causation of the concussion. Filing 80-2 at 8–9. The assessment notes "the recommendation of a chiropractor for 'whiplash and concussion sx,'" and that Lockhart "reports spontaneous headrest airbag deployment 7/24/23." Filing 80-2 at 8. It then notes that Lockhart "has a history of TBI/concussion from MVC 2014, concussion 1997, chronic back pain, anxiety/depression/PTSD, syncope vs. seizure d/o, and allergies." Filing 80-2 at 8. Nothing in the cited parts of this record, Filing 80-2 at 5–9, states a treating expert's conclusion that any symptoms or conditions were caused by the headrest deployment that Lockhart reported. *See, e.g., Lounnaphanh v. Monfort, Inc., 583 N.W.2d 783, 791 (Neb. Ct. App. 1998)* ("We are of course concerned with whether the record contains medical opinions establishing that the events which the doctors learned of through medical history caused the medical condition with which the doctors diagnosed [the patient].") Thus, this evidence fails to generate a genuine issue of material fact on causation precluding summary judgment because no reasonable jury could return a verdict for Lockhart on causation based on this evidence. *Liberty Ins. Corp.*, 87 F.4th at 888 (stating this standard).

Similarly, a medical record from Madonna Hospital dated September 6, 2023, states in the "Chief Complaint and History of Present Illness" section that Lockhart "sustained an injury on 7/24/2023 when she was driving at approximately 30mph when her headrest airbag spontaneously deployed." Filing 80-2 at 1. It then states various complaints, a depression test result, a treatment plan, and a diagnosis of "Adjustment disorder anxiety and depressed mood." Filing 80-2 at 1–4.

Again, this record does not include a treating expert's conclusion that the headrest deployment caused Lockhart's injury, but only that Lockhart complained of injury after the headrest deployed. *Lounnaphanh*, 583 N.W.2d at 791. Other records from Madonna Hospital cited by Lockhart simply discuss symptoms or conditions and may mention the headrest deployment without any statement by a treating expert that the headrest deployment caused the conditions. Filing 80-2 at 10–18; *Lounnaphanh*, 583 N.W.2d at 791. Again, this evidence fails to generate a genuine issue of material fact on causation precluding summary judgment because no reasonable jury could return a verdict for Lockhart on causation based on this evidence. *Liberty Ins. Corp.*, 87 F.4th at 888 (stating this standard).

A medical record from Nebraska Medicine is no different. Again, it indicates that Lockhart reported "her airbag going off spontaneously," reports "a head injury that occurred . . . via a spontaneous airbag deployment," and states treatment thereafter, but it includes the manifestly inaccurate statement that Lockhart was told at urgent care on the date of the incident that "she has a concussion." Filing 80-3 at 1; *but see* Filing 68-11 at 25 (urgent care note concerning a response to call from Lockhart on July 28, 2023, stating, "Called patient and told her whoever diagnosed here [sic] with concussion needs to give the referral to Madonna Rehab for concussion. She was not complaining of any concussion symptoms at the time of my exam. Her chirpractor [sic] diagnosed her with the concussion and he will have to send the referral to Madonna."). More importantly, nowhere in this record is there any conclusion by the treating expert at Nebraska Medicine that the headrest deployment caused any of Lockhart's conditions or the specifically diagnosed "concussion syndrome." Filing 80-3 at 1–6. Like the records from Madonna Hospital, this evidence fails to generate a genuine issue of material fact on causation precluding summary judgment because no reasonable jury could return a verdict for Lockhart on causation based on this evidence. *Liberty Ins. Corp.*, 87 F.4th at 888 (stating this standard).

13

In short, Lockhart's assertion that "[t]reating physicians at two facilities linked the incident to symptoms that were identified as having been caused by the headrest" is wholly unsupported by the evidence in the record, and no reasonable jury could conclude otherwise. *Id.*

### 4. Summary

Lockhart has failed to carry her burden in opposition to FCA's Motion for Summary Judgment to "cit[e] particular materials in the record" or show that the "materials cited do not establish the . . . absence of a genuine dispute" on the issue of causation of her alleged injuries by the headrest deployment. Fed. R. Civ. P. 56(c)(1); *see also Torgerson*, 643 F.3d at 1042 (setting out the parties' burdens at summary judgment). Thus, FCA is entitled to summary judgment on all of Lockhart's claims. *See Roskop Dairy, L.L.C.*, 871 N.W.2d at 794 ("Whether a plaintiff is proceeding under negligence, defect theories, or breach of express warranty, proximate cause is a necessary element of the plaintiff's case."); *see also Rusness*, 31 F.4th at 614 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." (citation omitted)).

### B. The Motions to Exclude Experts

The Court's determination that FCA is entitled to summary judgment on all of Lockhart's claims means that the question of the admissibility of Lockhart's experts' opinions and testimony is moot. Therefore, FCA's Motions to Exclude Experts are denied as moot.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.     FCA's Motion for Summary Judgment, Filing 66, is granted as to all claims in Lockhart's Complaint;

2.      FCA's Rule 702 Motion to Exclude the Opinions and Testimony of Dr. Jiaxin Tran,

Filing 69, is denied as moot; and

3.      FCA's Rule 702 Motion to Exclude Opinions and Testimony of Douglas

Mcilwraith, Filing 72, is denied as moot.

IT IS FURTHER ORDERED that Judgment shall enter accordingly.

Dated this 18th day of November, 2025.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

15